

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

No. 02-24-00349-CV

ERICA RICHARDSON AND R.E. RICHARDSON BUILDERS, LLC, Appellants

V.

BUILDER SERVICES GROUP, INC. DBA TRUTEAM BUILDER SERVICES
GROUP, INC. DBA QUALITY INSULATION, Appellee

On Appeal from County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2023-008111-1

Before Sudderth, C.J.; Birdwell, J.; and Gonzalez, J.[1]
Memorandum Opinion by Justice Birdwell

---

[1]The Honorable Ruben Gonzalez, Judge of the 432nd District Court of Tarrant County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

# MEMORANDUM OPINION

Appellee Builder Services Group, Inc. dba TruTeam Builder Services Group, Inc. dba Quality Insulation obtained a default judgment against Appellants Erica Richardson and R.E. Richardson Builders, LLC for $26,702.15, plus $920.35 in pre-judgment interest, plus $4,733.50 in attorney's fees. Richardson individually filed a pro se "Motion to Set Aside Default Judgment and Notice of Hearing," which the trial court denied following a hearing on the motion. She subsequently retained counsel, who filed a "Motion to Modify or Vacate Judgment" on behalf of both Richardson and the LLC. The trial court did not rule on that motion. Richardson and the LLC timely appealed.

We dismiss the appeal as to the LLC based on its unopposed motion to dismiss. As to Richardson's appeal, we reverse and remand.

## I. Background

Builder Services supplied the LLC with materials and services at two construction sites located in Mississippi and Tennessee. After the LLC failed to pay the invoices for the materials and services, Builder Services sued the LLC and Richardson individually, alleging suit on a sworn account, breach of contract, and

1

alternatively, quantum meruit.[2] It brought the suit in Tarrant County "pursuant to Chapter 15 of the Texas Civil Practice and Remedies Code."

The LLC was served through its registered agent in Houston, Texas. Builder Services hired a private process server, Charles Wright, to personally serve Richardson at "[XXX] Kingwood Drive, Suite [XXX], Kingwood, Texas 77339." When personal service on Richardson was unsuccessful, Builder Services moved for substituted service. *See* Tex. R. Civ. P. 106(b). It requested that the trial court order service on Richardson either by "leav[ing] a copy of the citation with petition attached with anyone over the age of 16 years or by attaching to the door" at "[XXXXX] Trebuchet Dr., Kingwood, Texas 77339." In a supporting affidavit, Wright attested that the Trebuchet Dr. address was Richardson's "usual place of business or usual place of abode or other place where [she] c[ould] probably be found." The Trebuchet Dr. address appeared for the first time in the motion for substituted service. Neither the motion nor Wright's affidavit explain where that address came from or why Wright did not attempt service at the Kingwood Drive address, which had been used in Builder Services' petition, its request for citations of service, and the citation.

The trial court granted Builder Services' motion for substituted service. In his subsequent affidavit of service, Wright asserted that he had "executed service" on

---

[2]Builder Services sued Richardson under Section 171.255 of the Texas Tax Code, which provides for personal liability of an LLC's officers and directors for debt incurred after the LLC's right to do business has been "forfeited for the failure to file a report or pay a tax or penalty." Tex. Tax Code Ann. § 171.255(a).

Richardson by attaching a copy of the citation—the citation with the Kingwood Drive service address—and the petition to the door at the Trebuchet Dr. address.

After Richardson and the LLC failed to answer, Builder Services moved for a default judgment, and the trial court entered a "Final Default Judgment" against Richardson and the LLC.

Richardson timely filed a pro se motion to set aside the default judgment using a TexasLawHelp.org form.[3] The form motion contained instructions to "[c]*heck box 5a or box 5b*." Richardson checked box 5a, "Lack of Notice," and checked, "I did not file an answer because I was not properly served with citation." She then provided the following explanation for her failure to file an answer:

> The address listed has been leased since September 1, 2024 [sic].[4] The citation was left on the front door tenant did not acknowledge citation. Neighbor contacted me about door posting. I purchased a new property in Olive Branch MS in July of 2024 [sic].[4] I can provide email receipts of payments and bank transfers that were made to the Plaintiff[] as well as a counter[]claim will be filed for repairs, delays of both properties listed as well as attorneys fees/court costs with interest.

Richardson signed the motion and provided a mailing address in Olive Branch, Mississippi, noting that "mail will be set to transfer from this address to Texas address in September 2024."

---

[3]The motion was silent as to the LLC.

[4]Richardson filed the motion on May 10, 2024—months before this date. At the hearing on the motion, held June 28, 2024, Richardson testified that she had purchased the property in Olive Branch "last year."

At the hearing on her motion to set aside the default judgment, Richardson appeared pro se. She testified that she had moved to Mississippi—near one of the construction sites related to the unpaid invoices—in 2023 and had not known anything about the lawsuit until she received information about the judgment against her. She explained that she owned the property at the Trebuchet Dr. address—one of several properties that she owned—but that she had leased it out while she was living in Mississippi.[5] She also confirmed that she had purchased property in Olive Branch, Mississippi the previous year and offered to provide the warranty deed.

After hearing arguments, the trial court denied Richardson's motion to set aside the default judgment. Richardson subsequently retained counsel and filed a motion to modify or vacate the judgment, which was filed on behalf of both Richardson and the LLC. The trial court did not rule on that motion. This appeal followed.

## II. The LLC's Appeal

We have considered the LLC's "Unopposed Motion to Dismiss R.E. Richardson Builders, LLC." We grant the motion and dismiss the appeal as to the LLC. *See* Tex. R. App. P. 42.1(a)(1), 43.2(f).

---

[5]Richardson testified that she had been pregnant, that she had had complications with her pregnancy, and that she could not fly. She gave birth in Mississippi and then stayed there until the baby was old enough to fly; she offered to provide the trial court with the baby's birth certificate and flight information establishing that she had been in Mississippi.

## III. Richardson's Appeal

In three issues, which we construe as two, Richardson argues that (1) Builder Services relied on a deficient affidavit to support its Rule 106(b) motion for substituted service; therefore, the trial court's order granting substituted service was defective and failed to comply with Rule 106(b) or due process and (2) because she satisfied the elements of *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939), the trial court abused its discretion by denying her motion to set aside the default judgment.

### A. Review of Default Judgment

When a default judgment is attacked by a motion for new trial, the critical question is "Why did the defendant not appear?" *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 573–74 (Tex. 2006). If the answer to this critical question is "Because I didn't get the suit papers," the default judgment generally must be set aside. *Id.* at 574. But if the answer to the critical question is "I got the suit papers but then . . . ," the default judgment should be set aside only if the defendant proves the *Craddock* elements. *Id.*

For a default judgment to be properly rendered, the trial court must have personal jurisdiction over the defendant at the time the default judgment is entered. *See* Tex. R. Civ. P. 124; *Garcia v. Ennis*, 554 S.W.3d 209, 214 (Tex. App.—Fort Worth 2018, no pet.); *Marrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 378 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Personal jurisdiction in the trial

court depends on proper service of process. *Garcia*, 554 S.W.3d at 214; *see Livanos v. Livanos*, 333 S.W.3d 868, 874 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("A claim of a defect in service of process challenges the trial court's personal jurisdiction over the defendant.").

Whether a trial court has personal jurisdiction over a particular defendant is a legal question that we review de novo. *Wyatt v. Deal*, No. 02-18-00246-CV, 2019 WL 2432156, at *3 (Tex. App.—Fort Worth June 6, 2019, no pet.) (mem. op.). We indulge no presumption in favor of proper issuance, service, or return of citation. *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020). If the record does not "affirmatively show strict compliance with the Rules of Civil Procedure," we will conclude that the attempted service of process was "invalid and of no effect." *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990); *see Spanton*, 612 S.W.3d at 316 ("[A] no-answer default judgment cannot stand when the defendant 'was not served in strict compliance with applicable requirements.'" (quoting *Wilson*, 800 S.W.2d at 836)).

Any doubts about a default judgment must be resolved against the party who secured the default. *In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 922 (Tex. 2024) (orig. proceeding).

## B. Rule 106(b) Substituted Service

A trial court may authorize a substituted method of service under Rule 106(b). Tex. R. Civ. P. 106(b). The party seeking substituted service must file a motion supported by an affidavit that strictly complies with the Rule. *Id.*; *see Wilson*, 800

S.W.2d at 836. The affidavit must list the "location where the defendant can probably be found" and must state specifically the facts showing that the traditional methods of service have been attempted unsuccessfully at that location. Tex. R. Civ. P. 106(b). Under Subsection 106(b)(2), the affidavit or other evidence must show that the substituted method of service "will be reasonably effective to give the defendant notice of the suit." Tex. R. Civ. P. 106(b)(2). Substituted service may not properly issue on a motion supported by an affidavit "that is conclusory or otherwise insufficient." *Wilson*, 800 S.W.2d at 836.

## C. Analysis

In its motion for substituted service, Builder Services asserted that personal service on Richardson was not possible because she "ha[d] been unavailable at [the Trebuchet Dr. address] and ha[d] failed to call the officer attempting to serve citation." In Wright's supporting affidavit, he stated that he made the following "efforts" to effectuate service:

> 12/15/2023 12:37 pm Attempted service at [XXXXX] Trebuchet Dr., Kingwood, TX 77339, No answer. The home is quiet. The interior lights are off. There is FedEx envelope addressed to the subject, Erica Richardson, next to the front door. There is a blue Jeep with Florida plate [XXXXXX]. I conducted a vehicle registration search on the TLO Database and the search results showed that the vehicle in question is registered to "Enterprise Rent a Car." No one appears to be home. There are two cameras at the service address (scene and doorbell). When I pressed the doorbell, it picked up but no one spoke (light was steady). Calls for the subject go unanswered.

7

12/18/2023 8:05 am Attempted service at [XXXXX] Trebuchet Dr., Kingwood, TX 77339, Same. No answer. The Florida car is still parked in the street in front of the service address.

12/16/2023 6:38 pm Attempted service at [XXXXX] Trebuchet Dr., Kingwood, TX 77339. No answer at the door. The Fed[E]x is still at the front door addressed to the subject. There is now a second envelope addressed to the subject from UPS at the front door. The home is quiet. No one appears to be home.

12/29/2023 3:14 pm Attempted service at [XXXXX] Trebuchet Dr., Kingwood, TX 77339. No answer at the door. The home is quiet. The envelopes are gone. No cars in the driveway.

1/13/2024 4:10 pm Attempted service at [XXXXX] Trebuchet Dr., Kingwood, TX 77339. I knocked on the door and no one answered. The lights inside the house were on[] and I could tell someone was inside the home. I did not observe any cars in the driveway.

Wright did not attest that his efforts included leaving a business card or other contact information at the Trebuchet Dr. address, attempting to speak to any neighbors, or attempting to reach Richardson by phone.

We conclude that Wright's affidavit did not strictly comply with Rule 106(b)'s requirements. Specifically, it did not contain any probative evidence that the Trebuchet Dr. address was a place where Richardson could probably be found or that the substituted method of service would have been "reasonably effective" to give Richardson notice of the suit. *See* Tex. R. Civ. P. 106(b). Rather, the "evidence" contained in the affidavit consisted of the following: (1) a vehicle with Florida plates was sometimes parked in front of the property; (2) that vehicle was registered to "Enterprise Rent a Car"; (3) a light on the doorbell camera turned on when pressed,

which, according to Wright, meant that someone had "picked up" but did not speak; (4) there were two envelopes addressed to Richardson near the door of the property; (5) those envelopes were gone when Wright returned almost two weeks later; and (6) during one of his five attempts at service, the lights inside the house were on and he "could tell someone was inside."

This "evidence" was not sufficient to satisfy Rule 106(b). *See Gryder v. Cook*, No. 02-23-00434-CV, 2024 WL 4562493, at *3 (Tex. App.—Fort Worth Oct. 24, 2024, no pet.) (mem. op.) (holding that affidavit in support of substituted service did not "contain any statement, or facts supporting an inference, that the location where service was attempted was a place 'where the defendant [could] probably be found'" when nothing in the affidavit indicated how often the defendant would visit that location—a locked airplane hangar at which the defendant's plane was parked at the time of attempted service); *DeRouen v. Pridgen*, No. 13-22-00115-CV, 2023 WL 7399150, at *5 (Tex. App.—Corpus Christ–Edinburg Nov. 9, 2023, no pet.) (mem. op.) ("Neither the affidavit nor the motion for substitute[d] service included any facts to support an inference that [the defendant] could probably be found at the [attempted service] address."); *Brown Consulting & Assocs., Inc. v. Smith*, No. 05–12–00543–CV, 2013 WL 2316615, at *3 (Tex. App.—Dallas May 28, 2013, no pet.) (mem. op.) (rejecting affidavit that did not contain "evidence of probative value" that location in affidavit was defendant's usual place of business, usual place of abode, or other place where defendant could probably be found); *Coronado v. Norman*, 111

9

S.W.3d 838, 842 (Tex. App.—Eastland 2003, pet. denied) (reversing default judgment because affidavit in support of substituted service did not contain sufficient facts to satisfy Rule 106(b)); *Garrels v. Wales Transp., Inc.*, 706 S.W.2d 757, 759 (Tex. App.—Dallas 1986, no writ) (holding that affidavit must contain "evidence of probative value that the location stated in the affidavit is the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found"); *Mackie Constr. Co. v. Carpet Servs., Inc.*, 645 S.W.2d 594, 596 (Tex. App.—Eastland, no writ) (rejecting affidavit that contained conclusions and not "facts" as required by Rule 106(b)). Indeed, the affidavit's assertion that the Trebuchet Dr. address was Richardson's "usual place of business or usual place of abode or other place where [she] c[ould] probably be found" was conclusory.

The presence of the Florida rental vehicle established nothing for purposes of Rule 106(b); it did not connect Richardson to the Trebuchet Dr. address. Similarly, Wright's claim that the lights were on inside the house one time did not establish that it had been Richardson inside the house, nor did his claim that he "could tell" someone was there—speculation, at best—establish that Richardson had been there. The doorbell camera likewise failed to connect Richardson to that address. Wright assumed that the light on the doorbell indicated that someone had "picked up," but even if that had been an accurate assumption, he could only speculate as to who "picked up," especially since he never spoke to anyone. Contrary to Builder Services' misleading assertion that "no one at the [Trebuchet Dr. a]ddress told [Wright] he was

10

at the wrong address despite the fact that he asked for Richardson," according to Wright's affidavit, he never spoke to anyone there. Rather, no one ever answered the door, and Wright's affidavit disclosed no other attempt to engage anyone else, including any neighbor, to confirm Richardson's presence at the Trebuchet Dr. address.

The only evidence even remotely connecting Richardson to the Trebuchet Dr. address was the envelopes addressed to her near the door that were gone almost two weeks later.[6] But Wright could only speculate—and apparently did speculate—that Richardson had removed the envelopes herself. During those two weeks, someone else could have taken or removed the envelopes: a neighbor, a thief, a mail worker, a tenant of the property, etc. Moreover, the envelopes could have been sent to the

---

[6]Wright's affidavit is confusing in that his attempts at service are not dated chronologically. Specifically, his "12/16/2023" attempt is listed after his "12/18/2023" attempt. Assuming the 12/16/2023 date was a typographical error and was instead supposed to be 12/26/2023, making the dates chronological, then the FedEx envelope that "still" remained at the door that day, which was not mentioned in the intervening 12/18/2023 attempt, would have been there for at least eleven days at that point, joined by the UPS envelope. Further, Wright's observation that the Florida vehicle was "still" present on 12/18/2023, but not mentioned for the 12/16/2023 attempt, suggests that the latter attempt indeed occurred after the 12/18/2023 attempt, likely on 12/26/2023. With this confusion in mind, we nevertheless accept Wright's representation that he observed the FedEx and UPS envelopes together and that they were gone two weeks later.

Trebuchet Dr. address in error.[7] Without more, the evidence did not support Wright's conclusion that the Trebuchet Dr. address was Richardson's "usual place of business or usual place of abode or other place where [she] c[ould] probably be found," and it failed to establish that the substituted method of service would have been "reasonably effective" to give Richardson notice of the suit. *See* Tex. R. Civ. P. 106(b).

Nonetheless, Builder Services contends that Richardson was "notified" of the suit and posted citation by her neighbor. Even if Richardson's neighbor had told her about the posted citation before the default judgment was entered, mere knowledge of the pending suit did not place any duty on her to act. *See Wilson*, 800 S.W.2d at 836; *see also Drewery Constr. Co.*, 186 S.W.3d at 574 n.1 ("Receiving suit papers or actual notice through a procedure not authorized for service is treated the same as never receiving them.") *Marrot Commc'ns, Inc.*, 227 S.W.3d at 376 (explaining that "'[a]ctual notice to a defendant,' after defective substituted service, is 'not sufficient to convey upon the court jurisdiction to render default judgment against [her]'" (quoting *Wilson*, 800 S.W.2d at 836)). The default judgment therefore cannot stand on what Richardson's neighbor may or may not have told her.

---

[7]At the hearing on her motion to set aside the default judgment, Richardson provided the following explanation regarding the envelopes:

[T]hat's why, you know, any packages my neighbor would take those packages and put those in his garage. I don't know why packages -- sometimes I did make the mistake when I was on Amazon actually selecting the wrong address. I did do that a couple of times and things would come here, and he would just keep those things for me.

We conclude that Wright's affidavit in support of Builder Services' motion for substituted service did not strictly comply with Rule 106(b)'s requirements; therefore, it could not support the trial court's order for substituted service, and the attempted service on Richardson by attaching a copy of the citation—the citation with the Kingwood Drive service address—and the petition to the door at the Trebuchet Dr. address was invalid and of no effect. *See Wilson*, 800 S.W.2d at 836. Accordingly, we hold that the trial court did not have personal jurisdiction over Richardson when it entered the default judgment, and the default judgment against her must be reversed.[8]

## IV. Conclusion

We dismiss the appeal as to the LLC. As to Richardson's appeal, we reverse the default judgment against her and remand the case to the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: May 8, 2025

---

[8]In reaching this holding, we need not address the *Craddock* elements. *See Drewery Constr. Co.*, 186 S.W.3d at 574 (stating *Craddock* elements must be met only if the defendant against whom default judgment was entered was properly served but did not appear).